(68 App. Div. 18.)

## CURLEY v. ELECTRIC VEHICLE CO.

(Supreme Court, Appellate Division, First Department. January 17, 1902.)

1. CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Where the driver of an electric cab, on arriving at a cab stand, ordered plaintiff's driver to take his cab out of the way, in order that he might obtain a more advantageous position in the line, and, on refusal of plaintiff's driver, backed his cab against plaintiff's horse, the questions of the contributory negligence of plaintiff's driver, and as to whether defendant's driver was merely negligent or guilty of an assault, were for the jury.

2. SAME—WILLFUL INJURY.

Where the driver of defendant's cab, claiming the position in line at a cab stand occupied by plaintiff's cab, backed defendant's cab against

plaintiff's horse, seriously injuring it, and the complaint alleged that the act was negligently and willfully done, the question whether it was negligently or willfully done was for the jury.

**3. CAB STAND—POSITION IN LINE—FORCIBLE POSSESSION.**

Where plaintiff's cab occupied a position in the line at a cab stand which defendant was entitled to, defendant had no right to take forcible possession of the position by backing his cab against plaintiff's horse, to its injury.

**4. MASTER AND SERVANT—EMPLOYMENT—EVIDENCE.**

Where defendant owned and operated electrical cabs, and its cab drivers wore on their hats a plate with the words "Electrical Vehicle" and a number, evidence that a person wearing such a plate was operating one of its cabs at a cab stand is prima facie evidence that he was in defendant's employ.

Appeal from trial term, New York county.

Action by Patrick Curley against the Electric Vehicle Company. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Gilbert D. Lamb, for appellant.

J. Arthur Hilton, for respondent.

LAUGHLIN, J. The action is brought to recover damages for injuries to plaintiff's horse. For more than five years prior to the 2d day of December, 1898, cabs were permitted, by the acquiescence of the public authorities, to stand on West Thirty-Fifth street, Broadway, and Sixth avenue, next to the curb, adjacent to the triangle known as "Herald Square," for the purpose of receiving passengers for hire. The custom was for the cabs to face west on Thirty-Fifth street, north on Sixth avenue, and south on Broadway. The most desirable position was on West Thirty-Fifth street, next Broadway, and ordinarily that was the head of the line. When one vehicle moved out of the line, the others generally moved forward, thus maintaining a continuous line from Broadway easterly, southerly, and northerly, to the extent of the carriages upon the stand at a given time. It was the custom for the cabs, on arriving, to take a position at the end of the line. The plaintiff was accustomed to have a cab upon this stand, and on the day mentioned he sent a hansom there, the driver being his son. The son drove down Broadway, and, seeing the rear cab in the line on West Thirty-Fifth street pull out, he turned into West Thirty-Fifth street, and stopped next the Herald Building for a few moments to see whether the line would close up. At that time one of the defendant's electric cabs occupied the head of the line on Sixth avenue, a position which some of the drivers preferred. The defendant's driver was upon the sidewalk, reading a book. The plaintiff's driver, after waiting about three minutes, seeing no indication of any intention on the part of defendant's driver to take the vacant position, after it had been vacant five minutes, drove across the street, and occupied it himself. He stopped the hansom with the horse's head about three feet from the cab in front. Thereupon the defendant's driver mounted his cab, and came around

on West Thirty-Fifth street, and told the plaintiff's driver that that was his place, and to move out or back up. The plaintiff's driver made no effort to comply with this request, and held the place. The defendant's driver then cut in ahead of plaintiff's vehicle, and backed into his horse, knocking or crowding the horse onto the sidewalk, and inflicting substantial injuries. At the close of the plaintiff's case the defendant's counsel moved for a dismissal of the complaint, upon the grounds: (1) That plaintiff was guilty of contributory negligence; (2) that it was not shown that defendant was negligent; and (3) that it was not shown that defendant was operating the electric vehicle. The record indicates that the motion was granted upon the ground of contributory negligence. Counsel for the plaintiff duly excepted, and moved for a new trial upon the minutes, which was denied.

If the damages were caused by a negligent act, rather than a trespass or assault, of course, plaintiff could not recover, if his driver was guilty of contributory negligence. But, manifestly, that was a question for the jury. The defendant's servant was aware of the location of plaintiff's horse and hansom, and there was nothing to indicate—at least as matter of law—that he had lost control of the electric cab. Nor could it be said as matter of law that plaintiff's driver had reason to apprehend a collision. The plaintiff's driver had a right to assume that the defendant's driver would not take the law into his own hands, and deliberately inflict an injury or commit a trespass. Jetter v. Railroad Co., *41 N. Y. 154; Willy v. Mulledy, 78 N. Y. 310, 34 Am. Rep. 536; McCambley v. Railroad Co., 32 App. Div. 346, 52 N. Y. Supp. 849; Marino v. Lehmaier, 62 App. Div. 43, 70 N. Y. Supp. 790.

We also think that the defendant's liability was for the jury. The complaint alleges the facts, and in one subdivision characterizes the act of the defendant's driver as "negligence," and in another avers that the defendant's vehicle was "negligently and willfully" moved against plaintiff's horse. If the injury was willfully inflicted, that would constitute a crime (Pen. Code, § 654), and the presumption is in favor of innocence. If there was no intent to run into plaintiff's horse, then the act may be properly characterized as negligence, or a trespass. Even if plaintiff's driver usurped the place to which defendant was entitled,—which is not the necessary inference from the facts proved,—that did not justify defendant's driver in attempting to accomplish a "legal object in an unlawful way." Sullivan v. Dunham, 161 N. Y. 290, 55 N. E. 923, 47 L. R. A. 715, 76 Am. St. Rep. 274. It is, however, immaterial to the present inquiry whether the action be regarded as one for injuries to property, willfully inflicted, or for a negligent act constituting a wrongful injury to the property in the nature of a trespass, to which latter class, we think, the case more properly belongs. The jury would have been justified in finding that defendant's driver was acting in the course of his employment, and for the purpose of furthering his master's business; and, whether the injury was willfully or negligently inflicted, the defendant would be liable. Mott v. Ice Co., 73 N. Y. 543; Girvin v. Railroad Co., 166 N. Y. 289, 59 N. E. 921; Manufacturing Co. v. Gors-

line, 63 App. Div. 517, 71 N. Y. Supp. 619; Sullivan v. Dunham, supra; Lipscomb v. Railroad Co. (Tex. Sup.) 64 S. W. 923. The defendant was incorporated for the purpose of owning and operating electric vehicles in the city of New York. The driver of the electric cab which collided with plaintiff's horse had upon his hat a plate with the words "Electric Vehicle" and a number, and the same words were upon a plate upon the cab. It was shown that the drivers in the employ of the defendant, from the time it began business in New York until the month of June before the accident, wore a similar inscription upon their hats. This was the only evidence tending to show that the driver of the electric cab was in the employ of the defendant. We think it was sufficient to establish a prima facie case. Seaman v. Koehler, 122 N. Y. 646, 25 N. E. 353; Baldwin v. Abraham, 57 App. Div. 67, 67 N. Y. Supp. 1079; Hodgson v. Conklin, 50 App. Div. 604, 64 N. Y. Supp. 76; Isenman v. Miles, 38 App. Div. 469, 56 N. Y. Supp. 420; Wylde v. Railroad Co., 53 N. Y. 156.

These views lead to the conclusion that the judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur, except O'BRIEN, J., not voting.

<hr>